IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHANGLIN WU, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

The United States of America, pursuant to the provisions of 31 U.S.C. § 3711(g)(4)(C), with the authorization of a delegate of the Secretary of the Treasury and at the direction of a delegate of the Attorney General, brings this civil action to obtain a money judgment against Changlin Wu ("Wu") related to assessments made against him by a delegate of the Secretary of the Treasury pursuant to 31 U.S.C. § 5321. The United States complains and alleges that:

1. Jurisdiction over this action is conferred upon the district court by 28 U.S.C. §§ 1331, 1345, and 1355(a).

2. The defendant, Wu, is currently living in China. He resided within the jurisdiction of this Court during the period in which he conducted the activities that gave rise to the accrual of the penalties for which judgment is sought. *See* 28 U.S.C. § 1391(c)(3), 1395(a).

3. The defendant, Wu, was a lawful United States permanent resident during at least 2011, 2012, and 2013 and was a U.S. person pursuant to 26 U.S.C. § 7701(a)(30) for those years.

4. Between 1993 and 2004, Mr. Wu worked in the United States for Kerr-McGee (later Anadarko Petroleum). He earned in excess of $200,000 per year plus stock options.

5.  In 2007, Mr. Wu started Longwoods Resources, LLC ("Longwoods U.S."), a U.S. limited liability corporation, the income from which he reported on his federal income tax returns.

6.  Mr. Wu filed federal income tax returns for the 2011, 2012, and 2013 tax years. He self-prepared his tax returns for these years using TurboTax. The returns were not filed timely.

7.  Mr. Wu did not file a Schedule B with these tax returns, even though he owned bank accounts that earned interest. Schedule B is the schedule that is used to report interest income from bank accounts. It is also the schedule on which taxpayers are required to disclose if they have any foreign bank account(s).

8.  In an interview that occurred on October 1, 2014, Mr. Wu disclosed to the IRS that he had one foreign bank account with the Bank of China (***0518) in the name of a company called Longwoods Science & Technology Development, Inc. ("Longwoods China") with an account balance that did not exceed $10,000 USD.

9.  Mr. Wu later provided the IRS with bank statements from the Bank of China account (***0518) showing an account balance of 322,438 renminbi ("RMB") as of May 2012. Mr. Wu stated that one RMB was equivalent to approximately 15% of one U.S. dollar, or a balance of approximately $48,000 USD.

10.  Mr. Wu gave conflicting statements regarding his ownership interests in Longwoods China. He initially claimed to the IRS that he only owned 19% but later stated that he owned 100%.

11.  On April 1, 2015, Mr. Wu informed the IRS during a phone call that he did not hold any personal bank accounts in China during the 2011, 2012, and 2013 tax years.

12. Bank statements from the JP Morgan Chase account of Longwoods U.S. (***0904) showed incoming transfers from a Bank of China—Beijing account (***9304) on July 22, 2011 and May 8, 2012 in the amounts of $49,980 and $29,980, respectively. The JP Morgan Chase bank statements identified Mr. Wu as the owner of the Bank of China—Beijing account (***9304).

13. On May 7, 2015, Mr. Wu informed the IRS that the Bank of China—Beijing account (***9304) was the same as the Longwoods China account (***0518), even though the account numbers were different, and his name—not Longwoods—was listed on the Bank of China—Beijing account (***9304).

14. At a later date, Mr. Wu informed the IRS that the Bank of China—Beijing account (***9304) was owned by his first wife, who he asserted must have put his name on it.

15. On December 16, 2015, Mr. Wu informed the IRS that the Bank of China—Beijing account (***9304) was his temporary account that was closed, and that the Bank of China did not permit him to obtain past statements from a closed account.

16. On January 12, 2016, Mr. Wu informed the IRS that he had a personal bank account with the Bank of China but was unable to obtain bank statements. On July 15, 2016, he stated to the IRS that he had gone to China twice to obtain bank statements and was unsuccessful because (1) bureaucracy at the Bank of China prevented it, (2) the Bank of China was reluctant to release bank statements from closed accounts, and (3) his assistant had completed the account transactions.

17. Mr. Wu was required to report his interest in a foreign bank, securities, or other financial account for the 2011, 2012, and 2013 calendar years, to the United States by submitting, by June 30, 2012 (for the 2011 year), by June 30, 2013 (for the 2012 year) and by

3

June 30, 2014 (for the 2013 year), a form known as the TD F 90.22-1, Report of Foreign Bank and Financial Accounts ("FBAR").

18. On November 3, 2016, Mr. Wu filed a delinquent FBAR for the 2011 tax year; and on January 24, 2017, he filed delinquent FBARs for the 2012 and 2013 tax years. Through his FBARs, he reported six foreign bank accounts, including the Longwoods China account with the Bank of China—Beijing (***0518); two additional accounts with the Bank of China—Beijing, for both of which he listed the account number as "unknown"; and three accounts with Standard Chartered in Hong Kong. The FBAR report identified another individual as a co-owner of one of the additional Bank of China-Beijing accounts. The account balances for the 2011, 2012, and 2013 tax years, as reported by Mr. Wu on the FBARS he filed, were as follows:

| Bank | Account # | 2011 Highest Balance | 2012 Highest Balance | 2013 Highest Balance |
|---|---|---|---|---|
| Bank of China—Beijing | Unknown | $50,000 | $50,000 | $50,000 |
| Bank of China—Beijing | ***0518 | $364,209 | $80,120 | $26,670 |
| Bank of China—Beijing | Unknown | $50,000 | $50,000 | $50,000 |
| Standard Chartered (Hong Kong) | ***679-5 | $25,717 | $570 | $415 |
| Standard Chartered (Hong Kong) | ***596-3 | $199,972 | $199,986 | N/A |
| Standard Chartered (Hong Kong) | ***678-7 | $199,968 | $201,240 | $29,799 |
| Total Balance | | $689,894 | $381,930 | $156,884 |

19. On April 15, 2017, Mr. Wu's attorney sent a letter to the IRS stating that two Bank of China accounts (***9304 & ***3873) were "likely associated" with Mr. Wu. Second, the letter advised that Mr. Wu was unable to obtain bank statements for those two accounts

4

because (1) the ID card he presented to the banks was not the same as the one used to open the account, and (2) he would have to travel to the bank's district branch office to access archived files for the account because the account was closed.

20. On or about February 7, 2019, Mr. Wu produced to the IRS bank statements for the Bank of China-Beijing account (***9304), which showed high balances of $887,038, $1,032,132, and $546,311 for 2011, 2012, and 2013, respectively.

21. Following receipt of this information, the IRS recalculated Mr. Wu's account balances for 2011, 2012, and 2013, by aggregating the information reported on his delinquent FBARs together with the account balances listed in the bank statements for the Bank of China-Beijing account ***9304. As recalculated by the IRS, Mr. Wu's highest aggregate account balances for 2011, 2012, and 2013 were $1,526,932, $1,364,062, and $653,195, respectively.

22. The following chart summarizes Mr. Wu's foreign bank accounts and highest balances for the years at issue, based on the IRS recalculation:

| Bank | Account # | 2011 Highest Balance | 2012 Highest Balance | 2013 Highest Balance |
|---|---|---|---|---|
| Bank of China—Beijing | ***9304 | $887,038 | $1,032,132 | $546,311 |
| Bank of China—Beijing | ***0518 | $364,209 | $80,120 | $26,670 |
| Bank of China—Beijing | ***3873 | $50,000 | $50,000 | $50,000 |
| Standard Chartered (Hong Kong) | ***679-5 | $25,717 | $570 | $415 |
| Standard Chartered (Hong Kong) | ***678-7 | $199,968 | $201,240 | $29,799 |
| Total Balance | | $1,526,932 | $1,364,062 | $653,195 |

23. Mr. Wu, during each of the 2011, 2012, and 2013 calendar years, had an interest in a foreign bank, securities, or other financial account in which the aggregate balance, at some time during each respective year, exceeded $10,000.

5

24. Mr. Wu did not submit the FBAR for the 2011 year by June 30, 2012; did not submit the FBAR for the 2012 year by June 30, 2013; and did not submit the FBAR for the 2013 year by June 30, 2014.

25. The delinquent FBARs that Mr. Wu submitted for 2011, 2012, and 2013 did not disclose all the accounts in which he had an interest during those years and did not disclose the correct highest balance amounts in the accounts for those years.

26. Each of the failures of Mr. Wu to submit the FBARs timely and accurately, as described in paragraphs 24 and 25, above, was willful.

27. Shortly before June 30, 2018, Mr. Wu executed a consent to extend the statute of limitations for the 2011 FBAR assessment.

28. Using the recalculated high-balances set forth in paragraph 23, the IRS determined a total FBAR penalty of $763,466 for the three years at issue (i.e., 50% of the 2011 balance). The IRS allocated $344,947 to 2011, based on the balance reported on the delinquent filed FBAR, and allocated the remaining $418,519 pro rata to 2012 and 2013, based on the ratio of their total highest balances.

29. On or about April 8, 2019, a delegate of the Secretary of the Treasury, pursuant to the extension of the statute of limitations, timely made an assessment, pursuant to 31 U.S.C. § 5321, against the defendant, Mr. Wu, in the amount of $344,947.00, related to his willful failure to submit an FBAR for the year ending December 31, 2011. This assessment was based on the aggregate balance reported by Mr. Wu in his delinquent FBAR for 2011. The amount assessed under 31 U.S.C. § 5321 is commonly known as a "FBAR Penalty."

30. On or about May 30, 2019, a delegate of the Secretary of the Treasury made an assessment, pursuant to 31 U.S.C. § 5321, against the defendant, Mr. Wu, in the amount of

$283,001.00, related to his willful failure to submit a FBAR for the year ending December 31, 2012.

31. On or about May 30, 2019, a delegate of the Secretary of the Treasury made an assessment, pursuant to 31 U.S.C. § 5321, against the defendant, Mr. Wu, in the amount of $135,518.00, related to his willful failure to submit a FBAR for the year ending December 31, 2013.

32. In addition to the principal amount of the assessments described in paragraphs 29-31, above, Mr. Wu is liable for a late-payment penalty pursuant to 31 U.S.C. § 3717(e)(2) and 31 Code of Federal Regulations § 5.5(a), and interest accruing pursuant to law.

33. With interest and other statutory accruals, the amount due with respect to the assessments described in paragraphs 29-31, above, is $812,747.87 as of April 8, 2020.

WHEREFORE, the United States seeks the entry of judgment against the defendant, Changlin Wu, in the total amount of $812,747.87, plus interest or other statutory additions accruing after April 8, 2020.

                                                RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Robert J. Wille*
ROBERT J. WILLE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-514-5573 (v)
202-514-5238 (f)
Robert.J.Wille@usdoj.gov